UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL GADDY,

    Plaintiff,

v.

DR. N. ADAM,

    Defendant.

Case No. 14-cv-01642-HSG (PR)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 17

## INTRODUCTION

Plaintiff, a California prisoner currently incarcerated at California Correctional Institution, filed this *pro se* civil rights action under 42 U.S.C. § 1983 against Defendant Dr. N. Adam, a medical doctor, at Pelican Bay State Prison ("PBSP"), where Plaintiff was previously incarcerated. Specifically, Plaintiff alleges that Defendant discontinued a medical chrono that had prevented correctional officers from handcuffing Plaintiff's arms behind his back due to a shoulder injury.[1] The Court found that, liberally construed, the complaint stated a cognizable claim for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment.

Now before the Court is Defendant's motion for summary judgment. Plaintiff has filed an opposition, and defendant has filed a reply.

## BACKGROUND

The following facts are undisputed unless otherwise noted:

Plaintiff is serving a sentence first imposed in 1993. Strain Decl. ¶ 6 & Ex. A. Due to a

---

[1] A medical "chrono" is a recommendation, usually related to an inmate's medical condition or course of treatment, issued by a prison physician. *See e.g.,* Cal. Code Regs. tit. 15, § 3043.5(d) (describing the medical chrono also known as "Form 128–C"); *see generally* Cal. Code Regs. tit. 15, § 3000 (defining "general chrono" written on CDC Form 128–B "which is used to document information about inmates and inmate behavior").

United States District Court
Northern District of California

1    left shoulder condition, he received a temporary chrono for "side cuffing" starting on October 7,

2    2008. Sayre Decl. ¶ 6. Plaintiff has given two different narratives explaining his shoulder

3    condition to medical providers. *Id.* He has stated that his shoulder was injured during a 2007

4    motor-vehicle accident. *Id.*[2] He has also stated that he injured his shoulder while lifting weights

5    at some date before 2007. *Id.*; Adam Decl. Ex. A (AGO 44). The chrono became a permanent

6    accommodation on October 2, 2009. Sayre Decl. ¶ 6. The "side cuffing" chrono changed to a

7    "waist chain" chrono for unknown reasons on October 18, 2010. *Id.* Plaintiff was transferred to

8    PBSP on or about April 21, 2011. Sayre Decl. ¶ 7. The waist chain chrono stayed in effect at

9    PBSP until June 28, 2013.

10   On June 28, 2013, Plaintiff appeared at the PBSP clinic for a follow-up medical

11   examination after returning from his appointment with an ear specialist at which he received a

12   hearing aid. Adam Decl. ¶ 6. Defendant examined Plaintiff. *Id.* Plaintiff's new hearing aid

13   required a new Comprehensive Accommodation Chrono (CDCR Form 7410). *Id.* Under prison

14   policy, a Comprehensive Accommodation Chrono must include all accommodations that are

15   currently medically necessary. *Id.* Therefore, Defendant reviewed Plaintiff's existing chronos and

16   medical records to determine whether Plaintiff's existing medical chronos were medically

17   necessary and should be included in the new Comprehensive Accommodation Chrono. *Id.*

18   During the time period between his arrival at PBSP and June 2013, Plaintiff never

19   submitted a request for medical treatment concerning his shoulder. Adam Decl. ¶ 6. Further,

20   during this time period, no x-rays were taken of Plaintiff's shoulder and he had not been treated

21   for any acute shoulder dislocations. *Id.* After reviewing Plaintiff's medical records, Defendant

22   found no medical evidence that the waist chain chrono was medically necessary. *Id.* Therefore,

23   on June 28, 2013, Defendant completed a new Comprehensive Accommodation Chrono for

24   Plaintiff and discontinued the waist chain chrono. *Id.* ¶ 6 & Ex. A (AGO 21, 69).

25   On July 18, 2013, Plaintiff submitted a health care services request form, asking Defendant

---

[2] Exhibits submitted by defendant suggest Plaintiff reported this was an accident in a state vehicle. *See* Adam Decl. Ex. A (AGO 49).

2

1  to explain her discontinuation of the waist chain chrono. Adam Decl. ¶ 8 & Ex. A (AGO 66).
2  According to Defendant, Plaintiff was referred to medical staff, but he refused to be evaluated. *Id.*
3  ¶ 8 & Ex. A (AGO 65). According to Plaintiff, he never refused an appointment but merely
4  received a cell-front visit from a nurse who told him she could not reinstate the chrono. Compl. at
5  4. Later, on July 19, 2013, Defendant received correspondence from Plaintiff again requesting the
6  reason for the discontinuation of the waist chain chrono. Adam Decl. ¶ 8 & Ex. A (AGO 61).
7  Defendant responded and explained to Plaintiff that it was necessary for him to submit a request
8  for medical treatment and not to refuse the appointment so that a medical staff member could
9  complete the initial medical evaluation and triage his request for medical services in accordance
10 with prison policy. *Id.* Defendant also requested additional information from Plaintiff concerning
11 his shoulder so that additional medical records could be ordered. *Id.*

12     According to the complaint, on August 5, 2013, two correctional officers went to
13 Plaintiff's cell to take his cellmate to an appointment. Compl. at 4. Plaintiff had to wait for a long
14 period of time with his hands cuffed behind his back while his cellmate was stripped. *Id.* While
15 waiting, Plaintiff's shoulder popped out of its socket, causing extreme pain. *Id.* at 4-5. His
16 cellmate helped him to pop the shoulder back into place.

17     According to PBSP medical staff, this incident was never reported. Sayre Decl. ¶ 11;
18 Adam Decl. ¶ 10. Rather, records show that Plaintiff was involved in an unwitnessed, in-cell fight
19 that was unrelated to any custodial action. Sayre Decl. ¶ 11. There are no medical records
20 indicating Plaintiff sought medical treatment for this incident. Adam Decl. ¶ 10. However, an
21 August 5, 2013 progress note states that Plaintiff refused to exit his cell for a medical evaluation
22 and completion of a CDCR Form 7219 (a form used to record any injury sustained by an inmate
23 after an incident). *Id.* ¶ 10 & Ex. A (AGO 60).

24     Later, on or about August 13, 2013, a medical staff member again requested additional
25 medical records concerning Plaintiff's shoulder. Adam Decl. ¶ 9. During an August 23, 2013
26 medical appointment, Dr. Martinelli issued Plaintiff a temporary waist chain chrono. *Id.* Ex. A
27 (AGO 49, 50). During this medical visit with Dr. Martinelli, it was noted that Plaintiff was tender
28 only at the acromioclavicular joint. *Id.* The acromioclavicular joint and shoulder dislocation are

1  not medically related. Adam Decl. ¶ 9. "A patient may suffer from severe acromioclavicular joint
2  separation (and pain) and still not be at greater risk for a shoulder dislocation." *Id.*

3  On September 10, 2013, Defendant issued a new medical chrono and continued the
4  temporary waist chain chrono because the additional medical records ordered in August 2013 were
5  not yet available for review. Adam Decl. ¶ 10, Ex. A (AGO 19, 44, 45). During the examination,
6  Plaintiff removed his shirt for a shoulder examination. *Id.* Defendant observed a very muscular
7  upper body and shoulders. Adam Decl. ¶ 10, Ex. A (AGO 44). Defendant opined that Plaintiff
8  completes a very extensive exercise program bilaterally in the upper extremities and had no
9  shoulder disability. *Id.* Upon observation, the shoulders were symmetric without any evidence of
10 dislocation. *Id.* Plaintiff was able to lift his left arm overhead nearly as well as his right arm
11 without any significant asymmetry. *Id.* Plaintiff was also able to abduct and move his left
12 shoulder through a complete range of motion without limitation. *Id.*

13 During the September 10, 2013 medical appointment, Plaintiff told Defendant that his
14 shoulder had "never popped out" when handcuffed in back. Adam Decl. ¶ 10, Ex. A (AGO 44).
15 Plaintiff also told Defendant that the last time his shoulder dislocated was a month earlier when
16 his "cellie slugged him" in the anterior shoulder and the shoulder dislocated to the back. *Id.* He
17 told Defendant that his cellmate then pushed the dislocated shoulder back until it went forward
18 into correct alignment. *Id.* As noted above, records show that Plaintiff refused a medical
19 evaluation after this incident. Adam Decl. ¶ 10 & Ex. A (AGO 60). Defendant scheduled a six-
20 month review of the temporary waist chain chrono. *Id.*

21 During a January 27, 2014 clinic visit with a nurse practitioner, Plaintiff underwent a
22 physical examination and showed full range of motion of internal and external rotation. Sayre
23 Decl. ¶ 13; Adam Decl. Ex. A (AGO 34, 35). Plaintiff was able to place his hands behind his back
24 without difficulty and the overall left shoulder range of motion was normal without hesitation or
25 weakness. *Id.* During another clinic visit with the same nurse practitioner, Plaintiff stated, "I need
26 the waist chain chrono just in case." Adam Decl. Ex. A (AGO 28). He denied any recent
27 dislocations of his shoulder. *Id.* In February 2014, the temporary waist chain chrono was
28 discontinued by another physician. Adam Decl. ¶ 10 & Ex. A (AGO 18).

4

1  //
2  //

## DISCUSSION

### I.  Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Id.*  The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

A verified complaint may be used as an opposing affidavit under Rule 56 provided it is

5

based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated, under penalty of perjury, contents were true and correct, and allegations were not based purely on information and belief but rather on personal knowledge). Here, Plaintiff's verified complaint is considered in opposition to the motion for summary judgment.

**II.   Analysis**

Deliberate indifference to a serious medical need violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *See McGuckin*, 974 F.2d at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104). The "existence of chronic and substantial pain [is an] . . . indication[] that a prisoner has a 'serious' need for medical treatment." *Id.* at 1060.

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If a prison official should have been aware of the risk but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). Mere negligence, or even gross negligence, is not enough. *Farmer*, 511 U.S. at 835-36 & n.4.

A showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate

indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctor chose was medically unacceptable under the circumstances and that he chose this course in conscious disregard of an excessive risk to plaintiff's health. *Toguchi*, 391 F.3d at 1058; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Farmer*, 511 U.S. at 837).

Defendant argues she is entitled to summary judgment on Plaintiff's Eighth Amendment claim for deliberate indifference to medical needs on the ground that there are no material facts in dispute. Defendant adds that, assuming her actions are found to be unconstitutional, it would not have been clear to a reasonable official that such conduct was unlawful and that therefore she is entitled to qualified immunity.[3]

As discussed above, Plaintiff alleges that his shoulder was dislocated on August 5, 2013, when correctional officers handcuffed him, an incident that he claims took place after Defendant had discontinued his waist chain chrono. Defendant denies Plaintiff's allegations and states that there is no record of any such August 5, 2013 custodial action. On summary judgment, however, the Court must view the evidence in the light most favorable to Plaintiff. The Court therefore accepts as true that Plaintiff was handcuffed on August 5, 2013, causing his shoulder to dislocate. Plaintiff's claim against Defendant nonetheless fails because he fails to show the second subjective prong of a deliberate indifference claim, *i.e.*, that Defendant was, subjectively, deliberately indifferent to Plaintiff's health or safety. *See Farmer*, 511 U.S. at 834. Assuming that Plaintiff had a serious medical condition, there is an absence of evidence that Defendant knew that Plaintiff faced a substantial risk of harm and consciously disregarded it by failing to take reasonable steps to abate it. *Id.* at 837.

The undisputed evidence shows that Defendant attended to Plaintiff on June 28, 2013, after

---

[3] As set forth below, the Court finds that defendant is entitled to summary judgment on the merits of Plaintiff's Eighth Amendment claim, thereby obviating the need to address the argument that she is shielded from liability on the theory of qualified immunity.

7

1 which she prepared a new Comprehensive Accommodation Chrono. Adam Decl ¶ 6. Her review
2 of Plaintiff's medical records showed that, during his time at PBSP, Plaintiff never submitted a
3 request for medical treatment concerning his shoulder. *Id.* Further, during his time at PBSP, there
4 had been no x-rays of Plaintiff's shoulder, and he had not been treated for any acute shoulder
5 dislocations. *Id.* Based on this review, Defendant determined that the waist chain chrono was not
6 medically necessary. *Id.* Because the medical records were devoid of medical evidence indicating
7 a shoulder pathology, Defendant could not have acted with a "sufficiently culpable state of mind"
8 in violation of the Eighth Amendment. *See Farmer*, 511 U.S. at 834.

      Moreover, Defendant's actions after the discontinuation of the waist chain chrono show that she did not ignore Plaintiff's medical concerns or fail to respond to his requests. The undisputed evidence shows that on July 19, 2013, Defendant received correspondence from Plaintiff requesting the reason for the discontinuation of the chrono. In response, Defendant informed Plaintiff that he needed to submit a request for medical treatment and cooperate with medical staff members. Adam Decl. ¶ 8 & Ex. A (AGO 61). Otherwise, staff members could not complete the required initial medical evaluation and triage his request in accordance with prison policy. *Id.*[4] At that time, Defendant also requested additional information from Plaintiff in an attempt to obtain additional medical records related to his alleged shoulder condition. *Id.* Although Plaintiff alleges that his shoulder popped out of its socket on August 5, 2013, Defendant's actions show that she continued to look into his claims by requesting additional information about his alleged shoulder condition in an attempt to adequately respond to his medical concerns.

      Plaintiff makes much of the fact that Defendant failed to examine or discuss his shoulder condition prior to discontinuing the chrono and makes various allegations about what Defendant should have known about his medical condition. *See* Compl. at 3, 6. Plaintiff's allegations amount at most to negligence. However, as mentioned above, negligence and even gross negligence are not enough to establish an Eighth Amendment violation. *See Farmer*, 511 U.S. at

---

[4] Although Plaintiff disputes defendant's contention that he refused medical treatment, this dispute does not create a genuine issue of material fact, and thus cannot defeat summary judgment.

835.

In sum, Plaintiff has not set forth sufficient evidence for a reasonable jury to find that Defendant's discontinuation of his waist chain chrono amounted to deliberate indifference to Plaintiff's serious medical needs. Accordingly, Defendant is entitled to summary judgment as a matter of law. *See Celotex*, 477 U.S. at 323.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (Docket No. 17) is GRANTED.

The Clerk is directed to correct the spelling of defendant's name on the court docket by substituting "Adam" for "Adams."

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: 5/1/2015

*/s/ Haywood S. Gilliam, Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge